**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DOREEN RHODES, | : |
| | : |
| Plaintiff, | : |
| vs. | : |
| | : |
| INDEPENDENCE BLUE CROSS, QCC | : |
| INSURANCE COMPANY and | : |
| WELLMARK, INC., | : |
| | : |
| Defendants. | : |
| | : |

No. 2:11-cv-1881-JD

**DEFENDANTS' JOINT MOTION TO STAY PROCEEDINGS AND
TRANSFER MATTER TO THE CIVIL SUSPENSE DOCKET**

Defendants, Independence Blue Cross, QCC Insurance Company, and Wellmark, Inc. (collectively, "Defendants"), by their respective undersigned counsel, hereby move to stay all proceedings in this matter and transfer the matter to the civil suspense docket.  Defendants assign in support of this motion the reasons set forth in the accompanying Memorandum of Law, which is incorporated in full by reference herein, and accompanying Exhibits attached thereto and made a part hereof.

Respectfully submitted,


 /s/ Katherine M. Katchen
David L. Comerford
Katherine M. Katchen
Matthew R. Varzally
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103-7013
Phone: (215) 965-1200

*Counsel for Defendants Independence Blue Cross
and QCC Insurance Company*


/s/ Jeffrey Grossman
Jeffrey Grossman
Marissa Parker
STRADLEY RONON STEVENS & YOUNG LLP
2600 One Commerce Square
2005 Market Street
Philadelphia, PA 19103-7098
Phone: (215) 564-8000

Kevin H. Collins (admitted *pro hac vice*)
Sarah J. Gayer (admitted *pro hac vice*)
NYEMASTER, GOODE, WEST, HANSEL & O'BRIEN,
P.C.
625 First Street SE, Suite 400
Cedar Rapids, IA 52401
Phone: (319) 286-7000

*Counsel for Defendant Wellmark, Inc.*

Dated:  October 21, 2011

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DOREEN RHODES, | : | |
| | : | |
| | : | No. 2:11-cv-1881-JD |
| Plaintiff, | : | |
| vs. | : | |
| | : | |
| INDEPENDENCE BLUE CROSS, | : | |
| QCC INSURANCE COMPANY and | : | |
| WELLMARK, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**BRIEF IN SUPPORT OF THE DEFENDANTS' JOINT MOTION TO STAY**
**PROCEEDINGS AND TRANSFER MATTER TO THE CIVIL SUSPENSE DOCKET**

Pursuant to this Court's October 11, 2011 Order (D.E. 42), defendants, Independence Blue Cross ("IBC"), QCC Insurance Company ("QCC"), and Wellmark, Inc. ("Wellmark") (collectively, "defendants"), submit this memorandum of law in support of their Joint Motion to Stay Proceedings and Transfer Matter to the Civil Suspense Docket. The Court should exercise the discretion conferred by *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and its inherent authority, to stay these proceedings in favor of the substantially similar litigation pending in Iowa state court between Pharmacy Matters and Wellmark, which is presently set for trial in April 2012. A limited stay in this case will conserve private and judicial resources, promote federal-state comity, and discourage blatant forum-shopping and improper litigation tactics.

1

I.     **BACKGROUND**

   A.     **The Dispute Between Pharmacy Matters and Wellmark**

   T. Zenon Pharmaceuticals, LLC ("Pharmacy Matters") is a specialty pharmacy located in

Iowa.  Plaintiff's Amended Complaint (D.E. 21) at ¶ 9.  Pharmacy Matters entered into

participating provider agreements with Wellmark, which is the Blue Cross Blue Shield affiliate

and licensee for Iowa.  *See, e.g.,* Exhibit A, Entity Services Agreement.  Those agreements are

collectively referred to as the "Wellmark Provider Agreement."

   Pharmacy Matters allegedly is an affiliate of Factor Health Management, LLC ("FHM"),

located in Florida, and purports to distribute various medicines, including blood-clotting factor

medication ("factor"), on FHM's behalf.  Amended Complaint at ¶ 10.  During 2008 and 2009,

reimbursement claims were submitted in Pharmacy Matters' name to Wellmark for factor

allegedly distributed pursuant to Pharmacy Matters' arrangement with FHM.  Amended

Complaint at ¶ 12; Exhibit B, Iowa Petition, at internal Exhibit C.  In some instances, the factor

was transported directly from FHM to the patient, without ever passing through Iowa.  *See*

Exhibit C, Declaration of Kevin H. Collins, at ¶ 8 ("Collins Declr.").

   B.     **Pharmacy Matters Files the Iowa Case**

   On May 1, 2009, Pharmacy Matters sued Wellmark in the Iowa District Court for

Johnson County.  Amended Complaint at ¶ 12, n.2 (the "Iowa Case"); Exhibit B, Iowa Petition.[1]

Pharmacy Matters asserted purported contractual claims under the Wellmark Provider

Agreement, as well as related tort claims.  Exhibit B, Iowa Petition.  Among the relief sought by

Pharmacy Matters in the Iowa Case is reimbursement from the patients' Home Plans for, among

numerous other claims, *the same two claims* for which plaintiff Doreen Rhodes sued IBC and

QCC (collectively, the "IBC Defendants") here, and which claims form the alleged basis of

---

[1] FHM is funding the Iowa Case.  Exhibit C (Collins Declr.) at ¶ 10; Exhibit D, Paduano letter.

plaintiff's tortious interference cause of action against Wellmark.  *See* discussion *infra* at 4-5.
Indeed, in the Iowa Case, Pharmacy Matters seeks to recover on millions of dollars worth of
factor claims submitted to Wellmark, which claims subsequently have been reasserted against
different defendants in various federal district courts.

In Wellmark's May 26, 2009 answer, it asserted a number of defenses to Pharmacy
Matters' claims, including, *inter alia*, that Pharmacy Matters had not provided "covered services"
with respect to the subject factor claims, that Pharmacy Matters' relationship with FHM violates
the anti-assignment provision of Pharmacy Matters' agreement with Wellmark, and that
Pharmacy Matters violated several insurance-related Iowa statutes and regulations.  Exhibit E,
Answer, at pp. 5-6.  Subsequently, Wellmark asserted various counterclaims against Pharmacy
Matters for declaratory judgment, attorney's fees and punitive damages, alleging, *inter alia*, that
(1) FHM improperly used Pharmacy Matters as a "proxy" with respect to the disputed benefit
claims, and (2) Pharmacy Matters had breached the covenant of good faith and fair dealing as a
result.  Exhibit F, Amended Answer and Counterclaims (attachments thereto omitted), at pp. 11-
22.

The Iowa Case has progressed substantially since it was initiated.  For example,
approximately 200 pleadings have been filed, multiple hearings have been held, written
discovery has been exchanged and responded to, over 44,000 pages of documents have been
produced, and at least fifteen depositions have been taken.  Exhibit C (Collins Declr.) at ¶¶ 5-7.
Pharmacy Matters served a subpoena on IBC in the Iowa Case, pursuant to which IBC produced
documents and a witness on the same two claims at issue in both cases.  Exhibit G, Declaration
of Katherine M. Katchen, at ¶¶ 3-6.  Trial is presently scheduled for April 2012.  However,
Pharmacy Matters recently contacted Wellmark and asked whether it would agree to a

continuance of that trial date until November 2012.  Wellmark has indicated that it would not oppose such a continuance.  No motion for continuance has yet been filed.  Exhibit C (Collins Declr.) at ¶ 9.  In any event, the Court should not permit Pharmacy Matters' efforts to delay the Iowa case to prejudice the defendants in this case or waste the Court's resources on duplicative litigation.

      **C.**      <u>**Pharmacy Matters and Others File the Tag-Along Factor Cases**</u>

      Five federal district court actions – including this matter – duplicate the Iowa Case.

      **1.**      <u>**The Eastern District of Pennsylvania Case**</u>

      In this action, plaintiff Doreen Rhodes alleges that her minor child is a hemophiliac who requires blood-clotting factor treatment.  Amended Complaint at ¶ 8.  Although a Pennsylvania resident, plaintiff claims to have obtained factor medication through Pharmacy Matters on at least two occasions.  *Id.* at ¶¶ 1, 9.  Plaintiff alleges that the IBC Defendants refused to pay two claims for her son's factor medication totaling $697,651.00.  *Id.* at ¶¶ 12, 15 (September 30, 2008 (Invoice # 15394 seeking $232,566.00) and October 30, 2008 (Invoice # 15464 seeking $465,085.00)).  These claims were submitted in the name of Pharmacy Matters to Wellmark pursuant to the Wellmark Provider Agreement, and Pharmacy Matters seeks to recover on these same two claims in the Iowa Case.  *Id.* at ¶ 12; Exhibit C (Collins Declr.) at ¶ 4.

      Plaintiff asserts three purported causes of action against the IBC Defendants under the Employee Retirement and Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), to recover "wrongfully denied benefits" and for injunctive and declaratory relief.  Amended Complaint at pp. 10-12.  The IBC Defendants have moved to dismiss the Amended Complaint because, *inter alia*, plaintiff lacks standing under Article III and ERISA, as she has not suffered

(nor is likely to suffer) any cognizable injury in this case.  *See* D.E. 23, 31.[2]

In her Amended Complaint, plaintiff also added a claim against Wellmark for "tortious interference with contractual relations" under Pennsylvania law.  Amended Complaint at pp. 13-15.  Plaintiff alleges that "[n]otwithstanding the lack of [a contractual] relationship between Plaintiff and Wellmark . . . Wellmark gave an instruction to the IBC Defendants not to pay [Plaintiff's claims] that was intentional, deliberate and knowing and was made with disregard of Plaintiff's contractual and legal rights."  *Id.* at ¶ 20.  According to plaintiff, Wellmark allegedly "coordinated" the processing and payment of claims for the IBC Defendants.  *Id.* at ¶¶ 12, 51. Wellmark has moved to dismiss Count Five of the Amended Complaint on each of the following grounds: (1) this Court lacks personal jurisdiction over Wellmark; (2) plaintiff lacks standing; (3) a tortious interference claim may be asserted only against a third-party to the subject contract, which plaintiff has not pleaded; (4) the claim is preempted by ERISA; and (5) plaintiff's claim is barred by the two-year statute of limitations.  *See* D.E. 34, 40.

The defendants' respective motions to dismiss remain pending and should be granted.

## 2.    The Southern District of Florida Case

On April 12, 2011, Pharmacy Matters, Chad Brown, and Eric Lowe sued Blue Cross Blue Shield of Florida, Inc. ("BCBSF") in the United States District Court for the Southern District of Florida, asserting claims nearly identical to those brought in this case.  *See Brown et al. v. Blue Cross Blue Shield of Florida, Inc.*, No. 11-80390 (S.D. Fla.) (D.E. 1) (Complaint) (the "Florida Case").  On August 8, 2011, United States District Judge Donald M. Middlebrooks granted

---

[2] The IBC Defendants have argued, *inter alia*, that because the Wellmark Provider Agreement prohibits Pharmacy Matters from seeking any amounts from plaintiff with respect to benefit claims submitted under that contract, plaintiff is not and cannot be financially liable to Pharmacy Matters for the factor medication her son received.  *See generally id.*  For example, the Wellmark Provider Agreement requires that Pharmacy Matters "accept payment by Wellmark as full payment for Covered Services furnished to Covered Persons except to the extent of deductibles, coinsurance and/or copayments."  Exhibit A at § 8.2; *see also id.* (Pharmacy Matters agreed "not [to] bill Covered Persons for any balance attributable to Covered Services other than deductibles, coinsurance and copayments. . . .").

BCBSF's request – over Pharmacy Matters' objections – to stay the Florida Case in favor of the Iowa Case. *Id.*, D.E. 46 (the "Florida Order").[3]

The Court first found "that the proceeding initiated in this Court is parallel to the ongoing litigation in Iowa state court[,]" noting that "[i]dentical parties, issues, and requests for relief [] are not required for a proceeding to be considered 'parallel' under the *Colorado River* doctrine." Florida Order at 13.  Judge Middlebrooks observed:

> In the Iowa case, Pharmacy Matters seeks a declaratory judgment that Wellmark must pay the claims submitted to them by Pharmacy Matters in accordance with their agreement, and damages in the amount of more than $6.6 million against Wellmark, based on a breach of contract claim under Iowa law. *Though recast under various forms of relief here* – including wrongful denial of benefits under ERISA, declaratory and injunctive relief pursuant to ERISA, and violation of Florida state law – *Plaintiffs' causes of action in this matter against BCBSF stem from the same outstanding payments for Factor treatment that are part and parcel to the $6.6 million claim for damages and request for declaratory judgment in the Iowa litigation.*

*Id.* (citations omitted) (emphasis added).[4]  The same is true as between this action and the Iowa Case.

Judge Middlebrooks next held that the "exceptional circumstances" test under *Colorado River* was satisfied for several reasons, including:

- "[T]he Iowa case began on May 1, 2009, almost two years prior to when Plaintiffs filed suit in federal court" and the Florida Case "is in its infancy . . . compared to the advanced stage of the litigation in the Iowa case." (*Id.* at 15)

- "[F]orum shopping is a significant concern in a case such as this, where considerable discovery has already taken place in the state proceeding and a plaintiff common to both the state and federal suit seeks a second bite of the apple in federal court."  (*Id.*)

---

[3] A copy of the Florida Order is attached hereto as Exhibit H.

[4] *See also id.* at 14 (noting that "these same unpaid invoices" from the Florida Case "are included in Pharmacy Matters' list of claims it timely submitted to Wellmark pursuant to their agreement, for which Wellmark has refused to pay" in the Iowa Case).

- "[T]he potential for piecemeal litigation in this matter cannot be denied" where "[t]he heart of this dispute in both the Iowa case and in this proceeding is the same: the outstanding payment for Factor treatment." (*Id.* at 16, 17)

- "[I]t is likely that a decision in the Iowa case may resolve the issues pending in this matter. Should the Iowa court find that Wellmark has breached its contract and that Plaintiffs are entitled to the roughly $6.6 million in damages they seek, Brown's, Lowe's, and Pharmacy Matters' ERISA claims in this suit will be moot." (*Id.* at 17)[5]

For these reasons, the Court granted BCBSF's alternative motion to stay (*id.* at 22), which decision the plaintiffs in the Florida Case have appealed to the Eleventh Circuit.  Florida Case, D.E. 47.

### 3.      The Western District of Pennsylvania Case

On February 25, 2011, Pharmacy Matters and William Griffis sued Highmark Blue Cross Blue Shield ("Highmark") in the United States District Court for the Western District of Pennsylvania, asserting claims nearly identical to those brought in this case and the Florida Case against other Blue Cross plans.  *See Griffis et al. v. Highmark Blue Cross Blue Shield*, No. 11-263 (W.D. Pa.) (D.E. 1) (Complaint) (the "Pittsburgh Case").  According to the docket, the Court granted a stay in the Pittsburgh case on or about August 31, 2011.  Notably, in their brief in opposition to Highmark's motion to stay the Pittsburgh Case, Pharmacy Matters and Mr. Griffis conceded that "the Iowa Action will at some point determine Pharmacy Matters' rights pursuant to its contract with Wellmark."  *Id.*, D.E. 28 at 9 n.3.  The docket further reflects that on October 17, 2011, the Court held a status conference, at which time the parties notified the Court that the claims in that matter would be paid within 30 days.  (Minute Entry 10/17/2011).

### 4.      The Eastern District of Michigan Case

---

[5] This Court made precisely the same observation about the relationship between this case and the Iowa Case on the parties' October 11, 2011 conference call.

On April 8, 2011, Pharmacy Matters and David Luckey sued Blue Cross Blue Shield of Michigan ("BCBSM") in the United States District Court for the Eastern District of Michigan, asserting claims nearly identical to those brought in this case, the Florida Case, and the Pittsburgh Case. *See Luckey et al. v. Blue Cross Blue Shield of Michigan*, No. 11-11500 (E.D. Mich.) (D.E. 1) (Complaint) (the "Michigan Case"). BCBSM answered the complaint on May 6, 2011 (*id.*, D.E. 6), and subsequently expressed its intention to file a motion to stay. *Id.*, D.E. 10 (BCBSM's Proposed Discovery Plan) at 4 ("Additionally, BCBSM will file a Motion to Stay Proceedings in lieu of the pending lawsuit in the State of Iowa."). As part of its affirmative defenses, BCBSM stated that "Pharmacy Matters has been litigating similar claims in Iowa. Because the case in Iowa was first filed and is scheduled for trial, the court should dismiss this matter. Plaintiffs cannot use the denial of claims as a way to forum shop. Plaintiffs are estopped from bring[ing] suit against BCBSM over issues that are pending in another lawsuit in a different venue." *Id.*, D.E. 6 at 9, ¶ 8.

### 5.    **The Idaho Case**

*Just two days ago*, two individuals sued Blue Cross of Idaho ("BCI") in the United States District Court for the District of Idaho, asserting claims nearly identical to those brought in this case and the Florida, Pittsburgh, and Michigan Cases. *See Rotondo et al. v. Blue Cross of Idaho*, No. 11-493 (D. Idaho) (D.E. 1) (Complaint) (the "Idaho Case").[6] The plaintiffs in the Idaho Case seek to recover under ERISA for allegedly unpaid factor benefit claims – filled by Pharmacy Matters – and submitted to Wellmark for processing in Iowa. *Id.* at ¶¶ 6-9. The plaintiffs also are represented by, *inter alia*, the same counsel who filed the other Factor Cases on Pharmacy Matters' and its customers' behalves. *See id.*, internal exhibits C-E.

---

[6] This case and the Iowa, Florida, Pittsburgh, Michigan, and Idaho Cases are referred to collectively as the "Factor Cases."

II.      **ARGUMENT**

      A.      **The Standards for Imposing Stays of Proceedings**

            1.      **The *Colorado River* Abstention Doctrine**

"The Supreme Court's decision in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976), provides the framework for analyzing when a federal court should stay an action." *Zokaites Props., LP v. La Mesa Racing, LLC*, No. 11-259, 2011 U.S. Dist. LEXIS 54053, at *8-9 (W.D. Pa. May 19, 2011) (ordering stay). "Analysis under *Colorado River* is two-part. First, the Court must determine whether the pending [state] action is 'parallel' to this [federal] one. Then, the Court must consider whether 'exceptional circumstances' exist that require abstention." *R&R Capital, LLC v. Merritt*, No. 07-2869, 2007 U.S. Dist. LEXIS 78754, at *31-32 (E.D. Pa. Oct. 23, 2007) (ordering stay).

An analysis of whether "exceptional circumstances" exist examines the following factors (if relevant): (1) whether either court has exercised jurisdiction over property; (2) whether the federal forum is inconvenient; (3) the desire to avoid "piecemeal litigation"; (4) the relative progress of the actions and the order in which they were filed; (5) what law applies to the claims; and (6) whether the state forum would adequately protect the parties' rights. *Id.* at *33-34; *Zokaites*, 2011 U.S. Dist. LEXIS 54053, at *9 (same). "The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

            2.      **The Court's Inherent Authority to Impose a Stay**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (Cardozo, J.). A district court may order a stay under *Landis* even if "abstention would be inappropriate under

any of the recognized doctrines," such as *Colorado River*. *Structural Group, Inc. v. Liberty Mut. Ins. Co.*, No. 07-1793, 2008 U.S. Dist. LEXIS 82266, at *12 (M.D. Pa. Oct. 16, 2008) (noting that "[t]he vitality of Justice Cardozo's observation in *Landis* . . . is undiminished by the passage of time").

Thus, "in the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Airgas, Inc. v. Cravath, Swaine & Moore LLP*, No. 10-612, 2010 U.S. Dist. LEXIS 15120, at *7 (E.D. Pa. Feb. 22, 2010) (ordering stay). Relevant factors for the district court to consider include "whether the proposed stay would prejudice the non-moving party, whether the proponent of the stay would suffer a hardship or inequity if forced to proceed[,] and whether granting the stay would further the interest of judicial economy." *Id.* "[A] district court's decision to defer proceedings because of concurrent state litigation is generally committed to the discretion of that court." *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 665 (1978).

## B. A Stay of Proceedings Is Warranted under the Circumstances

### 1. This Case Is "Parallel" to the Iowa Case

Like the Florida Case, which Judge Middlebrooks properly stayed, the instant case is parallel to the Iowa Case. Both this case and the Iowa Case are based in the same dispute, *i.e.*, whether Wellmark properly denied Pharmacy Matters' claims under the Wellmark Provider Agreement for factor medication allegedly dispensed to members of Blue Cross welfare benefit plans, including plaintiff Rhodes and her son. Thus, Judge Middlebrooks' ruling staying the Florida Case has equal merit and force here. *See* Florida Order at 13.

Under Third Circuit precedent, the parties and claims need not be *identical* to satisfy the "parallel" proceeding requirement; rather, "[t]he proceedings must have *substantial similarity* of parties, claims, and time." *DeAngelo Bros., Inc. v. Platte River Ins. Co.*, No. 09-1198, 2009 U.S.

10

Dist. LEXIS 101308, at *15 (M.D. Pa. Oct. 30, 2009) (holding that "[w]hile the defendants in

each case are slightly different, the underlying contract dispute and defenses will substantially

overlap") (emphasis added); *see also Fidelity Fed. Bank v. Larken Motel Co.*, 764 F. Supp. 1014,

1016-17 (E.D. Pa. 1991) (DuBois, J.) (". . . it is incorrect to assume that *Colorado River* only

applies where the state and federal actions are identical in every way").  This requirement is

satisfied because of the central role of Wellmark and Pharmacy Matters in each case, and the

identical legal issues under the Wellmark Provider Agreement that must be addressed in each.

*See Thomas v. Acme Scientific Mold Polishing Service and Supply, Inc.*, No. 93-5314, 1993 U.S.

Dist. LEXIS 16129, at *3-4 (N.D. Ill. Nov. 10, 1993) (ordering stay of federal ERISA action

filed after state action where, *inter alia*, "all of Plaintiff's allegations in the federal and the state

actions arise out of or are related to the Employment Agreement between the Plaintiff and the

Defendants").  Indeed, resolving Pharmacy Matters' purported right to reimbursement in the

Iowa Case will be *res judicata* as to certain issues surrounding plaintiff's purported right to

reimbursement from the IBC Defendants here.

    In any event, this Court may disregard any facial differences between the contract and

tort claims asserted in the Iowa Case and plaintiff's purported ERISA and tortious interference

claims in this case, because plaintiff's claims are defective and should be dismissed.  *See

Ryerson v. New Jersey*, No. 06-1214, 2007 U.S. Dist. LEXIS 93058, at *12-13 n.6 (D.N.J. Dec.

18, 2007) (ordering stay) (holding that "because Plaintiff's Title VII claims are procedurally

deficient and warrant dismissal, this Court need not take them into consideration when

determining whether the state criminal proceeding is parallel to this federal action").

2.     **The Relevant Factors of the "Exceptional Circumstances" Test Each Weigh in Favor of a Stay**

Each of the relevant factors under *Colorado River* and its progeny weighs in favor of defendants' request for a stay.[7]

Defendants' motion turns on the third and fourth *Colorado River* factors, which examine the likelihood of "piecemeal litigation" and the relative progress of the state and federal actions. With at least five duplicative Factor Cases now pending, there can be little doubt that Pharmacy Matters already has foisted "piecemeal litigation" upon the IBC Defendants, Wellmark, Highmark, BCBSF, BCBSM, and BCI for apparently strategic purposes.  Notably, the same law firm represents Pharmacy Matters, FHM and the patients (or their family members) in these cases.  As Pharmacy Matter has conceded, "to only one party should [a Blue Cross entity] be liable for the [factor] claims at issue. . . ."  Florida Case, D.E. 29 (Plaintiffs' Opposition to BCBSF's Motion for Stay) at 8 n.5.  Thus, simultaneously allowing (1) various purported customers of Pharmacy Matters to sue Blue Cross plans in their own right in various federal district courts, (2) Pharmacy Matters to sue the same defendants in those same courts on the basis of purported assignments,[8] and (3) Pharmacy Matters to sue Wellmark in Iowa state court over the exact same benefit claims, is *per se* duplicative and unreasonable.  For these reasons, "the generalized goal of avoiding piecemeal litigation" would be furthered through a stay. *Fidelity Fed. Bank*, 764 F. Supp. at 1017.

Such fractured litigation is particularly disfavored where a particular federal policy exists against concurrent federal proceedings.  *Id.* at 1018.  Here, insurance regulation is a subject of

---

[7] The first *Colorado River* factor is irrelevant in this action because neither the trial court in the Iowa Case nor this Court have exercised "jurisdiction over property."  *See* Florida Order at 18 (observing that contract-based actions do not constitute *in rem* proceedings).  Because the "convenience" of litigating in this Court does not weigh strongly for or against a stay, the second *Colorado River* factor also merits little scrutiny.

[8] It is alleged that the patients gave Pharmacy Matters "assignments" to recover directly from their respective insurers.

nearly-exclusive state prerogative.  "There is a strong federal policy of deferring to state regulation of the insurance industry, as reflected in the McCarran-Ferguson Act, 15 U.S.C. § 1012, [and] the ERISA savings clause, 29 U.S.C. § 1144(b)(2)(A)[.]"  *Wolfson v. Mut. Benefit Life Ins. Co.*, 51 F.3d 141, 147 (8th Cir. 1995) (affirming stay under *Burford* and *Colorado River* abstention principles).  Wellmark has raised issues in the Iowa Case about Pharmacy Matters' potentially fraudulent insurance practices under Iowa law (Exhibit E, Answer, at p. 6), and this Court should defer to the Iowa trial court and allow these issues to be resolved.

*Colorado River* abstention also is measured "by how much progress has been made in the two actions."  *Ryerson*, 2007 U.S. Dist. LEXIS 93058, at *15.  There is no comparison between the progress made here versus in the Iowa Case – while the parties are in pre-discovery motion practice in this case, in Iowa a trial date has been set and discovery is at an advanced stage.  *See* Exhibit C (Collins Declr.) at ¶¶ 5-7, 9.  Given that Pharmacy Matters' purported entitlement to reimbursement for factor medication it allegedly dispensed to a variety of Blue Cross plans' members is an important issue in each of the Factor Cases, "a ruling in this court on plaintiff's claims [c]ould unnecessarily cause havoc" because of the potential for multiple, inconsistent rulings on the same issue.  *See St. Clair v. Wertzberger*, 637 F. Supp. 2d 251, 255 (D.N.J. 2009) (ordering stay under *Colorado River*).

"[T]he possibility of conflicting decisions is very present here since both state and federal cases depend on interpretation of the same contract."  *Day v. Union Mines, Inc.*, 862 F.2d 652, 659 (7th Cir. 1988) (affirming stay); *see also Beggerow v. Affiliated Ins. Consultants, Inc.*, No. 95-6677, 1996 U.S. Dist. LEXIS 5305, at *11 (N.D. Ill. Apr. 22, 1996) (". . . it is highly probable that the state court proceeding will resolve most, if not all, of the issues raised in Beggerow's federal complaint. . . .") (staying federal ERISA suit in deference to existing state action).  The

Wellmark Provider Agreement will be construed under Iowa law, not ERISA, further evidencing that the Iowa Case should proceed before the other Factor Cases.

Finally, the fifth and sixth *Colorado River* factors also weigh in favor of a stay. These two factors analyze what law applies to the claims and whether the state forum would adequately protect the parties' rights. *See R&R Capital*, 2007 U.S. Dist. LEXIS 78754, at *34. Plaintiff's purported ERISA claim against the IBC Defendants may be mooted by the Iowa Case, if plaintiff's (theoretical) liability is extinguished by a determination under Iowa law that Wellmark is not liable to Pharmacy Matters under their provider agreement. *See Beggerow, supra*. In any event, "[s]tate courts have concurrent jurisdiction under ERISA." *Wolfson*, 51 F.3d at 146 (citing 29 U.S.C. § 1132(e)(1)); *see also Fornarotto v. Am. Waterworks Co., Inc.*, 144 F.3d 276, 278 n.2 (3d Cir. 1998) (same); Florida Order at 19-20 (same).[9] Thus, prioritizing the dispute between Pharmacy Matters and Wellmark in the Iowa Case, which encompasses each of the purported ERISA claims asserted in the other Factor Cases, is entirely appropriate.

**3.**    **This Court Should Exercise its Inherent Authority to Issue a Stay**

The factors relevant to the Court's inherent, discretionary authority to impose a stay weigh heavily in favor of granting defendants' motion. *First*, plaintiff would not be prejudiced by a stay, a fact that this Court observed on the parties' October 11 conference call. Under the "status quo", plaintiff's son admittedly already obtained the factor medication he requires, and no claim has been asserted against plaintiff for any related financial liability (nor could one be under the Wellmark Provider Agreement). Defendants have not requested an "indefinite stay", which some courts have found could prejudice the proponents of suits – instead, defendants seek only a

---

[9] Pharmacy Matters and its customers have opposed efforts to stay the other Factor Cases by arguing, incorrectly, that purported ERISA benefit claims somehow invoke "exclusive" federal jurisdiction. *See, e.g.,* Florida Case, D.E. 29 at 15, 15 n.12, 17; Pittsburgh Case, D.E. 28 at 2, 8, 10, 11. That argument is belied by the text of the ERISA statute.

stay long enough for the Iowa Case to be resolved.  That case is presently scheduled for trial in less than six months.

 *Second*, if no stay is issued, all of the parties – not only the defendants – would suffer mounting legal expenses in pursuing purely duplicative issues.  In essence, the parties would needlessly "re-create the wheel" concerning issues governing the relationship between Wellmark and Pharmacy Matters.  For example, the parties would incur the costs of written discovery, document productions, depositions, dispositive motion practice, and the like that largely would duplicate the efforts well underway in the Iowa Case.  The defendants should not be forced to incur these expenses merely because Pharmacy Matters was not satisfied with the progress, or its prospects, in the Iowa Case.  *See Beggerow*, 1996 U.S. Dist. LEXIS 5305, at *11 (granting stay where, *inter alia*, plaintiff's "federal suit, when viewed in even the best of lights, appears vexatious and/or contrived" because it duplicated a prior-filed state court action).

 *Third*, for the reasons stated, a stay promotes judicial efficiency and limits the possibility of multiple, inconsistent decisions.  Additionally, the Court should exercise its discretionary authority to stay this litigation not only because of the Iowa Case, but also in light of the other "copycat" federal cases filed by the attorneys representing Pharmacy Matters, its customers/patients, and FHM.  "A stay is particularly appropriate, and within the court's 'sound discretion,' where the outcome of another case may 'substantially affect' or 'be dispositive of the issues' in a case pending before a district court.  *This is especially true where the other case is proceeding in another federal court.*"  *MEI, Inc. v. JCM Am. Corp.*, No. 09-351, 2009 U.S. Dist. LEXIS 96266, at *12-13 (D.N.J. Oct. 15, 2009) (ordering stay) (citations omitted) (emphasis added); *see also Colorado River*, 424 U.S. at 817 (noting that "[a]s between federal courts . . . the general principle is to avoid duplicative litigation").  As discussed above, the Florida Case

15

has been stayed, the Pittsburgh Case was previously stayed, and BCBSM has stated its intent to request a stay of the Michigan Case.

**III.**   **<u>CONCLUSION</u>**

A reasonably tailored stay pending the outcome in the Iowa Case is a fair and efficient resolution here, both for the parties and the Court.  "Where the validity, enforceability and interpretation of a contract are at issue in both federal and state courts, and the state litigation was commenced first and has progressed substantially towards completion, entry of a stay does not under *Colorado River* constitute an abuse of discretion."  *Day*, 862 F.2d at 656.  For these reasons, and those set forth more fully above, the defendants respectfully request that the Court grant their joint motion for a stay of these proceedings pending a resolution in the Iowa Case.

Respectfully submitted,


 /s/ Katherine M. Katchen
David L. Comerford
Katherine M. Katchen
Matthew R. Varzally
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103-7013
Phone: (215) 965-1200

*Counsel for Defendants Independence Blue Cross
and QCC Insurance Company*


/s/ Jeffrey Grossman
Jeffrey Grossman
Marissa Parker
STRADLEY RONON STEVENS & YOUNG LLP
2600 One Commerce Square
2005 Market Street
Philadelphia, PA 19103-7098
Phone: (215) 564-8000


Kevin H. Collins (admitted *pro hac vice*)
Sarah J. Gayer (admitted *pro hac vice*)
NYEMASTER, GOODE, WEST, HANSEL & O'BRIEN,
P.C.
625 First Street SE, Suite 400
Cedar Rapids, IA 52401
Phone: (319) 286-7000

*Counsel for Defendant Wellmark, Inc.*

Dated:  October 21, 2011

17

## CERTIFICATE OF SERVICE

I, Marissa Parker, Esquire, hereby certify that on October 21, 2011, I caused true and correct copies of Defendants' Joint Motion To Stay Proceedings and Transfer Matter to the Civil Suspense Docket, with accompanying Memorandum of Law, Exhibits and Proposed Order, to be made available for viewing and downloading through the Court's ECF system, as well as served by electronic mail, upon counsel for the following parties:

Tim S. Cole, Esq.
MantaCole, LLC
500 Office Center Drive
Suite 400
Fort Washington, PA  19034
TimCole@mantacole.com

Anthony Paduano, Esq.
Jordan D. Becker, Esq.
Lori Vinciguerra, Esq.
Paduano & Weintraub LLP
1251 Avenue of the Americas
9th Floor
New York, NY 10020
ap@pwlawyers.ocm
jbd@pwlawyers.com
lv@pwlawyers.com

*Attorneys for Plaintiff,*
*Doreen Rhodes*

Daniel L. Comerford, Esq.
Katherine Menapace Katchen, Esq.
Matthew R. Varzally, Esq.
Akin Gump Strauss Hauer & Feld LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA  19103-7013
mvarzally@akingump.com
dcomerford@akingump.com
kkatchen@akingump.com

*Attorneys for Defendants*
*Independence Blue Cross and*
*QCC Insurance Company*

/s/ Marissa Parker
Marissa Parker