**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DOREEN RHODES,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | **NO. 11-1881** |
| **INDEPENDENCE BLUE CROSS,** | : | |
| **QCC INSURANCE COMPANY and** | : | |
| **WELLMARK, INC.,** | : | |
| Defendants. | : | |

**DuBOIS, J.**                                                                                                      **February 9, 2012**

## M E M O R A N D U M

### I.   INTRODUCTION

In this case, plaintiff claims that defendants—Independence Blue Cross and its subsidiary, QCC Insurance Company (collectively, "IBC defendants"), and defendant Wellmark, Inc., ("Wellmark") the Iowa Blue Cross affiliate—must pay an insurance claim for hemophilia medicine that plaintiff ordered through T. Zenon Pharmaceuticals, LLC, an Iowa mail-order pharmacy doing business as Pharmacy Matters ("Pharmacy Matters"). Presently before the Court is Defendants' Joint Motion to Stay Proceedings and Transfer Matter to the Civil Suspense Docket, in which defendants ask the Court to stay the case pending the resolution of an Iowa state court case ("the Iowa case") between Pharmacy Matters and Wellmark. For the reasons stated below, the Court grants the motion and stays the proceedings pending resolution of the Iowa case.

### II.   BACKGROUND

#### A.   Plaintiff's Complaint and Defendants' Responses

Plaintiff, a Pennsylvania resident, filled prescriptions for her son Quamir's expensive blood-clotting-factor hemophilia medicine ("Factor") through Pharmacy Matters, an Iowa

-1-

specialty pharmacy licensed to ship medicines to patients in other states.[1] (Am. Compl. ¶¶ 1, 8-9.) Pharmacy Matters provided two shipments of Factor to plaintiff and submitted claims for those two shipments to Wellmark for payment.[2] (Id. ¶ 12.) The total amount of the two claims was $697,651. (Id. ¶ 13.) Pharmacy Matters submitted the claims to Wellmark, which is the Blue Cross Blue Shield ("BCBS") association affiliate in Iowa, where Pharmacy Matters is located. (Id. ¶ 10.) Plaintiff alleges the prescription Pharmacy Matters filled was covered by the Blue Cross health insurance policy issued by the IBC defendants, but defendants refused to pay Pharmacy Matters's claims. (Id. ¶¶ 13, 15.) Wellmark stated that it denied the claims because Pharmacy Matters breached its provider agreement with Wellmark, and the IBC defendants took the position that they did not have to pay the claims because they were subject to a dispute between Pharmacy Matters and Wellmark, which was the BCBS affiliate responsible for "coordinat[ing]" payment. (See id. ¶ 12; Letter from Katherine Katchen to Lori Vinciguerra, Am. Compl. Ex. D, at 1.) Plaintiff received all of the medicine for which she seeks "reimbursement" and was covered by the IBC policy at all times in question, although she is no longer insured by the IBC defendants. (Def.'s Jt. Mot. Stay Proceedings and Transfer Case Civ. Suspense Docket ("Jt. Mot. Stay") 14; IBC Defs.' Reply Br. ("Defs.' Reply") 3.) Significantly, Pharmacy Matters has not sought payment of the claims from plaintiff.

Plaintiff contends that defendants are contractually obligated to pay the claims and that their failure to do so exposes her to liability to Pharmacy Matters for the nearly $700,000 balance on the Factor bill. (Am. Compl. ¶ 22.) In her Amended Complaint, plaintiff alleges: in Counts

---

[1] Pharmacy Matters was originally a plaintiff in this case, but the Amended Complaint named only Ms. Rhodes as plaintiff.

[2] Those claims are a September 30, 2008, claim for $232,566.00 (invoice no. 15394) and an October 30, 2008, claim for $465,085.00 (invoice no. 15464). (See Pharmacy Matters Open Account Receivables, Defs.' Mem. L. Mot. Dismiss Ex. C, at 1–3.)

I–III, that the IBC defendants violated the Employee Retirement and Security Income Act ("ERISA") by wrongfully denying her benefits; in Count IV, that the IBC defendants violated the Pennsylvania Quality Health Care Accountability and Protection Act; and in Count V, that Wellmark tortiously interfered with plaintiff's contractual relations with the IBC defendants.

In addition to defendants' motion to stay, pending before the Court are the IBC Defendants' Motion to Dismiss Amended Complaint, Wellmark's Motion to Dismiss, and plaintiff's Motion to Strike an affidavit filed with Wellmark's Motion to Dismiss. Although the IBC defendants and Wellmark raise several grounds for dismissal or, in the alternative, for a transfer of venue, their motions rely on the same theory of the case: Wellmark properly refused to pay Pharmacy Matters's claim for plaintiff's son's Factor because Wellmark was investigating possible Factor billing fraud with the assistance of the national Blue Cross Blue Shield association, other BCBS state providers, and government investigators. (Correspondence, Pl.'s Mem. Law Opp'n Def. Wellmark's Mot. Dismiss ("Pl.'s Wellmark Resp."), Exs. A–E.) The IBC defendants contend that plaintiff cannot be financially liable to Pharmacy Matters and has suffered no harm, and thus this case is nothing more than a contractual dispute between Wellmark and Pharmacy Matters. (See, e.g., Mem. L. Supp. IBC Defs.' Mot. Dismiss Pl.'s Am. Compl. ("IBC Defs.' Mem. L. Mot. Dismiss") 1–2.)

### B. The Iowa Case and Other Pending Cases

In May 2009, Pharmacy Matters filed suit against Wellmark in the Iowa District Court of Johnson County in the case of T. Zenon Pharmaceuticals v. Wellmark, Inc., No. 06521 LACV070675 ("the Iowa case"). (Am. Compl. ¶ 12 & n.2.) In the Iowa case, Pharmacy Matters seeks from Wellmark, inter alia, payment of the same two claims that are at issue in this case. (Jt. Mot. Stay 2.) Wellmark denied the claims and argued in Iowa that Pharmacy Matters

violated, inter alia, an anti-assignment provision in its Wellmark contract by serving as an Iowa proxy for an out-of-state pharmaceutical drug provider, Factor Health Management, LLC.  (Id. at 2–3.)  The parties have made substantial progress in discovery in the Iowa case with over 200 documents filed, 44,000 pages of documents produced, and at least fifteen depositions taken.  (Id. at 3; see also Iowa Docket Entries, T. Zenon Pharms. v. Wellmark, Inc., No. 06521 LACV070675 (D. Ct. Johnson Cnty., IA), available at https://www.iowacourts.state.ia.us/ (last accessed Feb. 8, 2012).)  The Iowa case is set for trial on November 6, 2012.  (Iowa Docket Entries 1.)

The Iowa case also involves claims that underlie cases filed across the country, including at least six cases in federal district courts and one case in North Carolina state court.  (Jt. Mot. Stay 4–8; Pl.'s Mem. L. Opp'n Defs.' Jt. Mot. Stay ("Pl.'s Opp'n") 4–5.)  Each of these cases is in a slightly different posture.  As of the date of this Memorandum, no court has decided the merits of either the case before it or the Wellmark–Pharmacy Matters dispute.  The only court to rule on a motion to stay granted the motion pending conclusion of the Iowa case, applying the Colorado River doctrine, which is discussed infra.  See Brown v. Blue Cross & Blue Shield of Fla., Inc., No. 11-cv-80390, at *22 (S.D. Fla. Aug. 8, 2011) (order denying motion to strike, denying motion to disqualify counsel, and granting stay).[3]  A motion to stay is pending in the case in the District of Idaho.  See Rotondo v. Blue Cross of Idaho, No. 11-cv-893 (D. Idaho).

**C.  Parties' Arguments**

Defendants argue that a stay pending the outcome of the Iowa state case is appropriate under two doctrines:  (1) Colorado River abstention, under which exceptional circumstances require abstention due to a pending state court case, see Colo. River Water Conservation Dist. v.

---

[3] This order is currently on appeal to the Eleventh Circuit.  Subsequent citations to the Brown court's August 8, 2011, Order take the form "Brown at *[#]."

United States, 424 U.S. 800 (1976); and (2) the Court's inherent authority to control its docket to promote economy of time and effort, see Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). (Jt. Mot. Stay 9–10.) According to defendants, the Court should grant a stay because "[b]oth this case and the Iowa [c]ase are based in the same dispute, i.e., whether Wellmark properly denied Pharmacy Matters's claims under the Wellmark Provider Agreement for factor medication allegedly dispensed to members of Blue Cross welfare benefit plans, including plaintiff." (Jt. Mot. Stay 10.) Plaintiff responds only that abstention under Colorado River is inappropriate; she does not respond to defendants' request for a stay under the Court's inherent authority. (Pl.'s Opp'n 7–28.) However, in her Colorado River argument, plaintiff addresses prejudice, hardship to defendants, and judicial efficiency, (id. at 26–28), which are the same factors the Court must evaluate in determining whether to use its inherent authority to order a stay.[4]

## III. LEGAL STANDARD

A court's authority to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, counsel, and for litigants." Landis, 299 U.S. at 254; see also Bechtel Corp. v. Local 215, 544 F.2d 1207, 1215 (3d Cir. 1976). The decision to stay "'is one left to the district court as a matter of its discretion to control its docket.'" Mendez v. Puerto Rican Int'l Cos., Inc., 553 F.3d 709, 712 (3d Cir. 2009) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 n.3 (1983)). Accordingly, a court may "[i]n the exercise of its sound discretion . . . hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." Bechtel Corp., 544 F.2d at 1215; see also Airgas, Inc. v. Cravath,

---

[4] As discussed infra, the Court concludes that a stay under the Court's inherent authority is appropriate. Thus, the Court does not address the parties' arguments as to the Colorado River doctrine.

Swaine & Moore, LLP, No. 10-612, 2010 WL 624955, at *2 (E.D. Pa. Feb. 22, 2010); Dimensional Music Publ'g, LLC v. Kersey, 448 F. Supp. 2d 643, 656 (E.D. Pa. 2006).

In determining whether to stay an action under its inherent authority, a court must weigh the competing interests of and possible harms to the parties. Dimensional Music, 448 F. Supp. 2d at 655. Factors that the Court should weigh include "whether the proposed stay would prejudice the non-moving party, whether the proponent of the stay would suffer a hardship or inequity if forced to proceed and whether granting the stay would further the interest of judicial economy." Airgas, 2010 WL 624955, at *3 (citing Landis, 299 U.S. at 254–55).

### IV. DISCUSSION

Weighing the parties' competing interests and harms leads the Court to order a stay of proceedings pending the outcome of the Iowa case. The Court addresses each of the relevant factors—prejudice to plaintiff if the stay is granted, hardship to defendants if the stay is not granted, and whether the stay furthers the interest of judicial economy—in turn and concludes that all favor granting the stay.

#### A. Prejudice to Plaintiff

Delaying the disposition of this case will cause only minimal, conjectural prejudice to plaintiff; she has already received the Factor medication, is no longer insured by the IBC defendants, and only faces a speculative threat of financial liability. (Jt. Mot. Stay 13; Defs.' Reply 3.) The core of plaintiff's claim, and the basis for each count of the Amended Complaint, is that Pharmacy Matters may seek to hold her financially responsible for the Factor it sold her if Pharmacy Matters loses the Iowa case. (See Am. Compl. ¶ 22 ("[I]f the IBC Defendants are not required to reimburse Plaintiff . . . Plaintiff will suffer injury because she will be liable to Pharmacy Matters . . . .") (emphasis added); Nov. 5, 2010, Letter from Michael Stein, Am.

Compl. Ex. C, at 1 (stating that Pharmacy Matters "is continuing to attempt to collect [the] amounts from . . . Independence Blue Cross and Blue Shield, but . . . in the event of their continued refusal to pay, you are responsible for the amounts" ).) Until the Iowa case is resolved, this harm is speculative. A favorable decision for Pharmacy Matters in Iowa would remove any threat of liability. A decision for Wellmark would have the same effect because Wellmark has counter-claimed for a declaratory judgment that Pharmacy Matters cannot bill plaintiff for any claims that Wellmark has denied.[5] (IBC Defs.' Mem. L. Mot. Dismiss 7 n.6.) Plaintiff thus faces, at worst, de minimis prejudice from a stay. See Brown at *17 ("Should the Iowa court find that Wellmark has breached its contract and that Plaintiffs are entitled to the roughly $6.6 million in damages they seek, [plaintiffs'] claims in this suit will be moot. . . . Even if the resolution of the Iowa case does not dispose of this suit, it will most likely narrow the issues . . . ." (citations omitted)); see also Waltman v. Dorel Juvenile Grp., Inc., No. 07-cv-4029, 2009 WL 2877153, at *2 (E.D. Pa. Aug. 28, 2009) (staying product liability action pending Pennsylvania state appellate courts' rulings because "the possibility that either court may . . . [issue] a ruling that would be dispositive of this entire case[] is sufficient justification to warrant the stay").

The other types of harm plaintiff has alleged do not compel a finding that a stay would cause any real prejudice. Her claim of damage to her "credit and credibility" is also conditional:

---

[5] Defendants argue forcefully that, even if Pharmacy Matters were to lose the Iowa state case, Pharmacy Matters is contractually prohibited from billing plaintiff for the amounts in question. (See, e.g., IBC Defs.' Mem. L. Mot. Dismiss 7–8.) Moreover, one of plaintiff's attorneys, Anthony Paduano, Esquire, represented Pharmacy Matters when it was a plaintiff in this matter. Mr. Paduano also represents Factor Health Management—Pharmacy Matters's distributor and the allegedly improper out-of-state distributor in the Iowa case—to whom Pharmacy Matters "owes a considerable sum of money." (April 23, 2009, Letter from Anthony Paduano to Michael Stein, Jt. Mot. Stay Ex. D, at 1.) Mr. Paduano is also admitted pro hac vice as counsel for Pharmacy Matters in the Iowa case (Iowa Docket Entries 21). From these relationships, the Court infers that, at least for the moment, plaintiff's and Pharmacy Matters's interests are not adverse. See Pa. R. Prof'l Conduct 1.7 (governing concurrent conflicts of interest).

She argues that, if the IBC defendants fail to pay, it "<u>will</u> seriously jeopardize the ability of Plaintiff to obtain health care services and products from pharmacies of her choice for Quamir . . . ."  (Am. Compl. ¶ 24.)  Plaintiff has not alleged that she has had any difficulty in obtaining Factor.  To the extent that she contends that she "incurred[,] and will continue to incur, significant attorneys' fees," (id. ¶ 21), a stay will not seriously prejudice her; she may benefit from decreased attorneys' fees if the Iowa case resolves favorably, and, at worst, she will incur only minimal incremental fees while this case is stayed.  Moreover, on the present state of the record, the stay in this case has a projected end date because the trial in the Iowa case is set for November 6, 2012, thus diminishing the potential for prejudice.[6]  See Airgas, 2010 WL 624955, at *2.

       The Court thus concludes that the risk of prejudice to plaintiff from a stay is minimal.

### B. Hardship to Defendants

       Defendants will suffer considerable hardship if forced to proceed in this case.  Plaintiff's claims turn on the same issue that Wellmark and Pharmacy Matters are litigating in the Iowa case.  Thus, the question before the Iowa court—whether Wellmark's refusal to pay Pharmacy Matters was proper—is one this Court would also have to confront.  The Iowa case was filed approximately twenty-two months before this case and "has been earnestly litigated for more than two years."  (Declaration of Kevin H. Collins ("Collins Decl."), Jt. Mot. Stay Ex. C, at ¶ 4.) The Iowa case is at a more advanced stage than this case: the parties have exchanged "multiple sets of written discovery" and have taken more than fifteen depositions, including expert depositions.  (Id. ¶¶ 6–8.)  Although they are not parties in the Iowa case, the IBC defendants complied with a subpoena in that case and produced documents and a witness regarding the

---

[6] The Court's ruling on this issue would not change in the event the Iowa trial is continued for a reasonable period of time.

Factor claims at issue in this case; the witness was deposed in May 2011.  (Declaration of Katherine M. Katchen and Exhibits, Jt. Mot. Stay Ex. G.)  Without a stay, defendants will be required to spend time and money on this litigation duplicating the work required in the Iowa litigation.

In her response to the Joint Motion to Stay, plaintiff focuses on the argument that the Iowa case will not affect this case because her "claims are asserted pursuant to ERISA and are based on facts relating solely to Plaintiff's insurance contract with the IBC Defendants and Wellmark's interference with that contract."  (Pl.'s Opp'n 15.)  The Court rejects this argument.  The dispute that arose when Wellmark refused to pay Pharmacy Matters created a "roadblock" in the processing of plaintiff's claim. The result of the Wellmark–Pharmacy Matters dispute may "substantially affect [this case]," Bechtel Corp., 544 F.2d at 1215, including the standing issue that is the partial basis of the IBC defendants' motion to dismiss (see IBC Defs.' Mem. L. Mot. Dismiss 7–8).  The Brown court reached a similar conclusion, stating: "Though recast under various forms of relief here—including [ERISA and Florida state law claims]—Plaintiffs' causes of action in this matter against BCBSF stem from the same outstanding payments for Factor treatment that are part and parcel to the $6.6 million claim . . . in the Iowa litigation."  See Brown at *13, 16–17 (citing Dailey v. Nat'l Hockey League, 987 F.2d 172, 174 (3d Cir. 1993).

The Court concludes that defendants would be required to expend significant resources unnecessarily duplicating work required in the Iowa litigation if this case were to proceed before the Iowa case is resolved.  Accordingly, this factor weighs in favor of granting a stay.

### C. Judicial Economy and Efficiency

A stay will promote judicial economy and efficiency.  As discussed supra, the resolution of the Iowa case is likely to have a significant effect on many of the issues before this Court,

including the parties' disputes as to plaintiff's standing and the merits of the case. This Court, in which motions to dismiss are pending and discovery has not begun, is not prepared to rule on the merits of the Pharmacy Matters–Wellmark dispute. The Iowa court is in a better position to resolve the issues for several reasons. First, the Pharmacy Matters–Wellmark dispute involves an alleged breach of a contract that is governed by Iowa law, (Entity Agreement, Exhibit to Iowa Case Complaint, Jt. Mot. Stay Ex. B ¶ 14.9), which the Iowa court is better suited to apply. See Shubert v. Roche Holding Ag, 157 F. Supp. 2d 542, 547 (E.D. Pa. 2001) (applying "the maxim that state courts are better suited to handle state claims"). Second, litigation in Iowa is at an advanced stage with trial already scheduled. Third, Pharmacy Matters is a party in the Iowa case but not in this Court, which makes the Iowa state court a more appropriate forum for litigating Pharmacy Matters's contractual claims. The Court thus concludes that a stay will serve "the interests of judicial economy, efficiency, comity and of the convenience of the parties themselves, who will be able to avoid the same cause of action being litigated in two forums simultaneously." Chintala v. Diamond Reo Trucks, Inc., 393 F. Supp. 1392, 1394 (E.D. Pa. 1975).

## V. CONCLUSION

After weighing the competing interests of and possible harms to the parties, the Court concludes that this case should be stayed pending resolution of T. Zenon Pharmaceuticals v. Wellmark, Inc., No. 06521 LACV070675, in the District Court of Johnson County, Iowa. The Court therefore grants Defendants' Joint Motion to Stay Proceedings and Transfer Matter to the Civil Suspense Docket.

An appropriate Order follows.